IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY A. PATE,<br><br>     Petitioner,<br><br>    v.<br><br>STU SHERMAN, Acting Warden,<br>California Substance Abuse Treatment<br>Facility and State Prison, Corcoran,[1]<br><br>     Respondent. | No. 2:12-cv-1759-JKS<br><br>MEMORANDUM DECISION |

  Jeffrey A. Pate, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Pate is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at the Substance Abuse Treatment Facility and State Prison in Corcoran, California. Respondent has answered. Pate has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On direct appeal, the Court of Appeal summarized the facts of this case as follows:

  On March 19, 2003, officers executed search warrants for residences occupied by [Pate] on Lake Glen Way and Tamoshanter Way in Sacramento County. At the Lake Glen residence, where [Pate] sometimes stayed with his girlfriend, the officers found .26 grams of methamphetamine, .1 grams of cocaine, and scales. In the Tamoshanter Way residence, where [Pate] primarily lived with his mother, officers found 942 grams of cocaine; eight firearms, some of which were loaded; a digital scale; and a box of plastic sandwich baggies.

---

  [1]  Stu Sherman, Acting Warden, California Substance Abuse Treatment Facility and State Prison, Corcoran, is substituted for M. Martel, former Warden, Mule Creek State Prison. FED. R. CIV. P. 25(c).

>In the garage of the Tamoshanter Way residence, the officers found over 100 tools and tool boxes, some bearing the name and/or driver's license numbers of Kevin Whitely and Ernest Buda. Both Whitely and Buda identified some of the tools as having been stolen from them.
>[Pate] testified, admitting possession of the cocaine and firearms. However, he claimed that he only possessed the cocaine and guns because he and his mother had been threatened by his neighbor with great bodily injury if he did not obtain and supply the neighbor with cocaine. As to the tools, [Pate] claimed to have purchased them at a flea market from "Ricky" or on the street, and he did not know they had been stolen.

A jury acquitted Pate of the possession of methamphetamine, but convicted him of possession of cocaine for sale and receiving stolen property. The jury additionally found that Pate was personally armed with a firearm. Following these verdicts, the jury then found that Pate had two prior convictions which constituted strikes. The court sentenced Pate to state prison for a term of 29 years to life.

Through counsel, Pate directly appealed, arguing that: 1) the jury instructions pertaining to the firearm enhancement were defective; 2) there was insufficient evidence to support the enhancement finding that he was "personally armed" with a firearm; 3) his conviction for receiving stolen property should be reversed because the court failed to give a unanimity instruction; 4) the trial court abused its discretion in refusing to dismiss one or more of the strikes. The Court of Appeal denied relief in a reasoned opinion.

Pate filed a counseled petition for review to the California Supreme Court, again arguing that the jury instructions pertaining to the firearm enhancement were defective and that the evidence was insufficient to support the enhancement finding that he was "personally armed" with a firearm. The supreme court summarily denied review on March 28, 2008.

On May 22, 2008, Pate filed a *pro se* petition for writ of habeas corpus with superior court. Pate argued that trial counsel was ineffective for failing to attempt to locate Robert

Murray, who Pate claimed coerced him into buying the cocaine. He further argued that the trial court's application of California's Three Strikes Law violated his right to due process and the constitutional proscription against *ex post facto* laws. Pate additionally requested that the court appoint counsel because he is a "laymen at law," developmentally disabled, and mentally ill. On July 3, 2008, the superior court denied Pate relief in a reasoned opinion.

Pate raised the same arguments in his *pro se* petition for writ of habeas corpus filed with the California Court of Appeal on July 13, 2008. Pate repeated his request for the appointment of counsel. The Court of Appeal summarily denied relief on July 17, 2008.

Pate raised identical arguments in his *pro se* petition for writ of habeas corpus filed with the California Supreme Court on August 28, 2009. Pate additionally argued that his Sixth and Fourteenth Amendment right to a trial by jury was violated "by placing sentence-elevating fact finding within the judge's province." Pate also requested the appointment of counsel. The California Supreme Court summarily denied relief on February 10, 2010.

On October 18, 2009, Pate filed a *pro se* motion for modification of his sentence, arguing that the trial court improperly imposed a $10,000 restitution fine. The superior court summarily denied Pate's motion for relief on November 3, 2009. Pate appealed that decision. Counsel appointed to Pate notified him that "there is really nothing to present to the court of appeal." Counsel then filed with the Court of Appeal a brief pursuant to *People v. Wende*, 600 P.2d 1071 (Cal. 1979), requesting that the court independently review the record to determine if there were any arguable issues on appeal. On October 26, 2010, the Court of Appeal denied relief, concluding after reviewing the entire record that there was "no arguable error that would result in a disposition more favorable to [Pate]."

On June 10, 2010, Pate filed a *pro se* petition for writ of habeas corpus with this Court. Pate claimed only that appellate counsel was ineffective for failing to raise any issue with regard to Pate's competency or any other grounds for relief. In its answer, Respondent argued that the claim was unexhausted but should nevertheless be denied on the merits. Pate requested that the action be stayed so that he could return to state court and exhaust his claim, but this Court denied that request on the ground that it did not have the authority to stay a petition containing only unexhausted grounds. This Court advised Pate that he could either proceed with his unexhausted claim or voluntarily dismiss the action, but advised that if he chose dismissal he should be mindful of the one-year statute of limitations governing federal habeas actions. On August 5, 2011, Pate elected to voluntarily dismiss the action, and on August 11, 2011, this Court entered a conforming order.

On September 12, 2011, Pate filed a *pro se* petition for writ of habeas corpus with the California Supreme Court, arguing that he was denied his right to the effective assistance of trial and appellate counsel. Pate argued that he had earlier been involved in a car accident in which he was ejected from the front windshield, resulting in head trauma and brain damage. Pate asserted that trial counsel "should have been alerted of a possible mental incompetence defense but counsel . . . proceeded with the case as though he was dealing with a normal client." Not only did counsel "fail to pursue [a] mental incompetency defense, he made a tactical choice to put [Pate] on the witness stand" which was problematic because counsel had failed to investigate the extent of Pate's "brain damage and mental limitations." Pate further argued that appellate counsel was ineffective for failing to raise the issue of his "competence to testify despite knowing he was incompetent to do so because he suffered from mental impairment's [sic] and

was under the influence of psychotropic medication." Pate asserted that he was prejudiced by counsel's deficient performance because "[i]f the court would have been fully appraised [sic] of [his] mental limitations the court itself would not have allowed [him] to testify" and it was reasonably probable that the outcome of the trial would have been different. The California Supreme Court summarily denied review on February 15, 2012.

On March 16, 2012, Pate filed another *pro se* petition for writ of habeas corpus with the California Supreme Court again arguing that trial and appellate counsel were ineffective for failing to adequately address Pate's alleged mental incompetency. Among other things, Pate argued that due to the fact that he was on psychotropic medications at the time, he "experienced severe difficulty" in answering questions on direct examination. At an unidentified point in time, he told his probation officer that his medications cause him to be "confused and disoriented." Pate argued that the prosecution took advantage of Pate's disability in closing argument by "mocking" him and suggesting that he had not told the truth. The supreme court summarily denied the petition on June 20, 2012.

Pate filed another petition for writ of habeas corpus with the California Supreme Court on April 7, 2012. Pate requested that the court consolidate the petition with his prior petition, and asserted that counsel to a prior conviction obtained in 1983 was ineffective because counsel failed to pursue plea negotiations. The supreme court summarily denied relief on June 20, 2012.

Pate filed the instant undated Petition with this Court on July 3, 2012. Respondent answered on January 24, 2013. After receiving Pate's October 3, 2013, letter inquiring as to the nature of a traverse, this Court entered an order on March 5, 2014, granting Pate 30 additional

days to file a traverse and explaining that a traverse and a reply are essentially the same. Pate did not reply.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Pate argues that trial counsel was ineffective for failing to investigate his competency or pursue an incompetency defense, and for making the tactical choice to have Pate testify in his own defense. Pate further argues that appellate counsel was ineffective for failing to raise any issues on direct appeal as to Pate's competency.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Pate has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

IV. DISCUSSION

A.   Timeliness

Respondent argues that Pate's Petition is untimely. Respondent further argues that several of Pate's motions for post-conviction relief are not eligible for statutory tolling because there was an "unreasonable delay" between filings, and that other motions simply do not qualify

to toll the limitations period. However, Pate's two substantive claims relate to his competency, and mental illness may constitute an "extraordinary circumstance" warranting equitable tolling in certain circumstances. *See Laws v. Lamarque*, 351 F.3d 919, 922-23 (9th Cir. 2003). Anticipating this argument, Respondent asserts that Pate has not established that he would be entitled to equitable tolling based on mental illness. Pate, however, has not filed a traverse in which he might address timeliness and equitable tolling. This Court need not resolve the issue of whether Pate's Petition is untimely or whether equitable tolling applies because his claims fail on the merits.

B.   Merits

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Pate must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

Pate has provided this Court with documentation that he suffers a psychotic disorder and memory problems due to his traumatic brain injury as well as antisocial personality disorder, anxiety, and depression.  Pate has been identified in some of those documents as having below average intellectual functioning, "variable" concentration, "distractable" attention, and a deficit in short-term memory.  However, trial counsel was not ineffective for allegedly failing to investigate Pate's competency or raise an incompetency defense.

In opening argument, defense counsel stated that Pate had been in a car accident in 1992 in which he was ejected through the windshield.  He was in a coma for 10 days after the accident.  The accident caused "substantial damage to his bodily functions.  He wore a diaper.  It

took years of recovery.  He could not speak.  He could not walk."  At the time of trial, he was on approximately 12 different medications, was "extremely physically weak," stuttered and was "inarticulate," and suffered from short-term memory loss.  Defense counsel noted that "[t]here is no defense of any kind of insanity, diminished capacity or anything else in this case . . . , but there is a reality that he does have some diminished function."  Defense counsel argued that Pate's diminished capacity caused him to be fearful and vulnerable, and that he only purchased the drugs because an individual named Robert Murray insisted, through threats to Pate, his girlfriend and his mother, that Pate purchase the drugs on his behalf.

Consistent with that theory of the case, Pate testified that he was physically and mentally vulnerable.  Pate testified that Murray, his mother's neighbor, was "pushy" and "t[ook] advantage of . . . [his] disability."  Murray solicited Pate to buy cocaine on his behalf, but Pate refused "over and over and over."  Murray then came over with a pistol in his waistband and made "threatening gestures" toward Pate and his mom.  Pate then arranged to purchase cocaine for Murray.

In closing argument, defense counsel reiterated that Pate committed the crimes because of his diminished capacity.  "He's got brain damage.  He's got a life of recovery.  He's got worries about this. . . . He's got an armory for God sakes.  He's scared."  Counsel continued:

> See, this guy's kind of in a quandary.  He has a lot of deficits.  But somebody comes and threatens him with immediate peril.  You know, he doesn't have the wherewithal.  It may not be reasonable for you, if you are a burly and sturdy guy, you can take down your weight in tigers and lions.  But it may be reasonable in terms of these circumstances to go along with things.  You know, these circumstances being extremely vulnerable, extremely scared, which has nothing to do with the conscience choice, just being scared because [of] who you are and what has happened to you.

Counsel argued that Pate should not be held liable for his crimes because he was forced under the circumstances to commit them.

Defense counsel was thus not only aware of Pate's physical and mental limitations, but relied on Pate's condition to argue that he purchased the cocaine only because he was under duress and was particularly vulnerable to Murray's threats. A tactical decision exercised by counsel deserves deference when counsel makes an informed decision based on strategic trial considerations and the decision appears reasonable under the circumstances. *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). Counsel's decision to forgo an incompetency claim and instead use Pate's condition to argue that he was subject to Murray's threats due to his diminished capacity was reasonable under the circumstances because there was no evidence that Pate was actually incompetent.

It is undisputed that "the conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378 (1966). To be competent to stand trial, a defendant must have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Maxwell v. Roe*, 606 F.3d 561, 568 (9th Cir. 2010) (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)). Despite his physical and mental limitations, Pate received his GED in 2000 and his medical assisting certificate in 2002. While enrolled in the Western Career College medical assisting program, Pate received a 4.0 in the three laboratory courses he attended, as well as a number of certificates of commendation, including one for "Outstanding Effort to Excellence" and another for "Outstanding Rookie." One of his instructors wrote a letter of recommendation on Pate's behalf, describing him as professional and showing "great initiative, tact, pride and accuracy in

everything he did." In addition, contrary to Pate's assertion, trial counsel did not make the decision to put Pate on the stand. Rather, documents submitted by Pate in support of his Petition state that he was "adamant" about testifying on his own behalf.

Under these circumstances, defense counsel could not have successfully argued that Pate, who was able to get his GED, successfully complete a technical college program after his brain injury, consult with counsel and testify in his defense, was incompetent to stand trial. Moreover, the medical records which Pate produced in support of his Petition state that he was afflicted with "[p]ersecution paranoia involving fear of others harming him," and had "[o]bsessions about being victimized." Putting Pate's competency at issue would thus likely have backfired, as would calling a medical expert to bolster his duress defense. Rather, it would have come to light that Pate had delusions of persecution, which would have undermined his theory that he was reasonably in fear of his life due to his debilitated physical and mental condition. Even without the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," this Court concludes that Pate's representation did not fall "below an objective standard of reasonableness" merely because counsel failed to present the meritless argument that Pate could not understand the proceedings against him or assist in his own defense. *Sexton v. Cozner*, 679 F.3d 1150, 1161 (9th Cir. 2012) (quoting *Srickland*, 466 U.S. at 688).

Nor was the trial court under a duty to *sua sponte* hold a competency hearing. Where there is a "bona fide doubt" as to a defendant's competence to stand trial, a court has a *sua sponte* duty to hold a competency hearing. *Pate*, 383 U.S. at 385-86. The test for a bona fide doubt is "whether a reasonable judge, situated as was the trial court judge whose failure to

conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Maxwell*, 606 F.3d at 568 (citation omitted). "Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, and one of these factors standing alone may, in some circumstances, be sufficient." *Id*. (quoting *Drope*, 420 U.S. at 180) (internal quotation marks and brackets omitted). "The heart of competency to stand trial is a defendant's present ability to consult with his lawyer with a reasonable degree of rational understanding and a factual understanding of the proceedings against him." *Id*. (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

There is no indication that the court was presented with any medical opinions or allegations as to Pate's competency to stand trial. *Cf. Drope,* 420 U.S. at 164 n.1 (noting that the trial court had a psychiatric report stating that defendant "had difficulty in participating well" and "was markedly circumstantial and irrelevant in his speech"); *Maxwell,* 606 F.3d at 570 (finding it significant that "the trial judge was aware of Maxwell's mental health history"). In fact, on the first day of trial, defense counsel requested that trial be continued until Pate was given his medications and something to eat; counsel, however, reassured the court that Pate was "competent" despite his severe medical condition. A defense counsel's assurances that a defendant is competent is both relevant and significant in determining whether the trial court had a *sua sponte* duty to hold a competency hearing. *Stanley v. Cullen*, 633 F.3d 852, 861 (9th Cir. 2011) (citing cases); *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 2011) ("a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings"); *Drope*, 420 U.S. at 176-77 ("judges must depend to some extent on counsel to bring issues into focus").

Before granting counsel's request, the court engaged in a colloquy with Pate about whether he had taken his medications and whether continuing the trial until after lunch would resolve any issues he had. Pate answered the court's questions coherently and appropriately. The transcript shows that Pate was articulate, alert and unafraid to address the court, factors which weigh against concluding that the trial court should have had a bona fide doubt as to Pate's competency. *See United States v. Lewis*, 991 F.2d 524, 528 (9th Cir. 1993).

At trial, the court heard that Pate had been studying to be a medical assistant. The court also heard Pate testify that despite the "strong" medications he was on, he was able to think clearly, and witnessed him give 81 pages of coherent and on-point answers in his trial testimony. In addition, at sentencing, Pate read an articulate letter that he had drafted himself, indicating, among other things, that since his incarceration he had "been active in the correspondence course with Crossword Bible Institute." Pate demonstrated an ability to comprehend the proceedings and assist in his own defense. After reviewing the documents produced by Pate as well as Pate's statements and conduct at trial and defense counsel's representation, this Court concludes that there are no grounds to hold an evidentiary hearing or otherwise expand the factual record to further investigate Pate's competency. *See Davis v. Woodford*, 384 F.3d 628, 646 (9th Cir. 2004) (although petitioner may have been depressed, his history, statements and conduct did not approach the "overwhelming indications of incompetence" present in case law establishing the *sua sponte* duty to hold a competency hearing); *cf. Pate*, 383 U.S. at 378-85 (trial court erred in failing to hold competency hearing where defendant had a brick dropped on his head when he was young, often "appeared in a daze," "lost his mind" according to his mother, was admitted to a psychiatric hospital for hearing threatening voices, shot and killed his son and attempted

suicide, and, after serving time, killed another individual); *Maxwell*, 606 F.3d at 569-76 (trial court erred in failing to hold competency hearing where defendant was prescribed antipsychotic drugs which he refused to take, attempted suicide during trial, required physical restraint during one proceeding and was removed from court, was under psychiatric hold during trial after being identified as "gravely disabled" and a danger to himself, and "communication with his counsel was so strained that defense counsel stated that he was unable to develop a theory of the case or make an opening statement and [the defendant] asked that his attorney hand over evidence helpful to the prosecution"); *Torres v. Prunty*, 223 F.3d 1103, 1109-10 (9th Cir. 2000) (defendant entitled to competency hearing where he requested that his attorney be fired, believed counsel and the court were conspiring against him, threatened to assault his attorney, insisted on being shackled and handcuffed, and continually disrupted trial until he was removed).

Lastly, appellate counsel was not ineffective for failing to argue that trial counsel ineffectively failed to argue that Pate was incompetent to stand trial. As discussed above, trial counsel's decision to use Pate's condition as part of a duress defense, rather than a basis to argue he was not competent to stand trial, was reasonable in light of Pate's medical records, his intellectual functioning which permitted him to successfully pursue an education, and his statements and conduct at trial. Appellate counsel would not have had any basis in the record to claim that, under these circumstances, trial counsel should have claimed that Pate was incompetent to stand trial. Rather, the record shows that Pate was not so impaired by his disabilities to prevent him from understanding the proceedings against him and assist in his own defense. The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding

that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Sexton*, 679 F.3d at 1161 (post-conviction counsel is not ineffective for failing to raise a non-frivolous or meritless claim). Pate is therefore not entitled to relief on any of his claims.

## V. CONCLUSION

Pate is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 14, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge